Sidwell *v.* Gimbel Brothers, Incorporated, Appellant.

*Negligence—Master and servant—Department store—Fall of roll of linoleum—Case for jury.*

1. In an action by a saleswoman of a department store against her employer to recover damages for personal injuries sustained from the fall of a roll of linoleum upon her while she was standing in an aisle at a checking desk in the performance of her duties, the case is for the jury, where, although there was no evidence to show what caused the roll to topple over and fall, it did appear that at the place of the accident there was a row of linoleum rolls standing on end, of from fifteen to

twenty-four inches in diameter, six feet in height, and weighing from twenty-five to 200 pounds without any support by rail or like guard, along an aisle frequently used by trucks, men and women.

2. What is and what is not negligence in the arrangement of heavy movable objects along an aisle in a department store that is frequently used, must be decided largely by the common sense observations of men, and the knowledge of natural laws. Neither judges nor jurors can ignore the natural results of everyday observations as applied to such objects.

Argued Oct. 15, 1912. Appeal, No. 55, Oct. T., 1912, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1909, No. 704, on verdict for plaintiff in case of Viola May Sidwell v. Gimbel Brothers, Incorporated. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FERGUSON, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*F. B. Bracken,* of *Loughlin & Bracken,* for appellant.— Plaintiff, in order to make out a case for recovery, was obliged to show what caused the accident, and that it was caused by some specific act of negligence on the part of the defendant: Higgins v. Fanning, 195 Pa. 599; Spees v. Boggs, 198 Pa. 112; Wojciechowski v. Spreckels Sugar Refining Co., 177 Pa. 57; Brace v. Kirby, 43 Pa. Superior Ct. 389.

It was not proper to permit the jury to infer negligence on the part of the defendant, from the evidence as to the manner in which the defendant kept and displayed its linoleum: Stearns v. Ontario Spinning Co., 184 Pa. 519; Titus v. R. R. Co., 136 Pa. 618.

Any risk arising from the way in which the defendant kept its linoleum was assumed by the plaintiff as one of the risks of her employment, and on this account alone the judgment entered in the court below should be reversed: McCarthy v. Shoneman, 198 Pa. 568; Byers v. Youghiogheny & Ohio Coal Co., 230 Pa. 10; Zuraw v. Hammermill Paper Co., 232 Pa. 544; Hollis v. Widener, 228 Pa. 466.

*R. Stuart Smith*, with him *Joshua C. Taylor*, for appellee. —The plaintiff alleged and proved circumstances from which the jury were at liberty to infer that the defendant had been negligent: Palmer v. Chester County Gas Co., 49 Pa. Superior Ct. 572; Ferry v. Transit Co., 232 Pa. 403.

It was also for the jury to say whether the danger was so apparent that the plaintiff assumed the risk: Valjago v. Carnegie Steel Co.. 226 Pa. 514.

OPINION BY ORLADY, J., February 27, 1913:

The plaintiff was employed as a head saleswoman in the upholstering department of the defendants' department store. After an experience of about three months, on January 4, 1909, while attending to her duty at a checking desk to which she was accustomed to go every time she made a sale, she was suddenly struck by a roll of linoleum, which toppled over and struck her with considerable violence.

Many such rolls were standing together, some were entire and others were not full pieces, but in diameter they presented the same appearance. They were not tied, nor racked and were without support by rail or other appliance. They were arranged in rows standing three, or four or five, deep, for a distance of forty or fifty feet, along an aisle in what was called a display room for exhibition and sale. The larger rolls were on the edge of the aisle, and it was one of these that fell on the plaintiff while she was standing at the wrapping or checking desk.

The plaintiff's department adjoined the linoleum sec-

tion, which was separated from it by an aisle about six feet wide, but not clearly defined in width or direction, but depending on the change of location of the linoleum rolls, and this aisle was used by customers, employees, and for trucking of material to and from the section. The wrapping or checking desk was on the edge of the aisle and faced the rolls of linoleum, which were five or six feet distant from the desk.

No definite evidence was offered as to the immediate cause of the accident, nor did the defendant offer any evidence in explanation. An employee who had been connected with the department of carpets, rugs, and linoleum for about fifteen years, testified that it was customary in the department stores in Philadelphia and New York to stand the linoleum on end and in rows without anything by way of support, as was done in this particular department.

The quality and degree of proof in such a case varies very largely with the circumstances of each case. In Lanning v. Pittsburg Rys. Co., 229 Pa. 575, a case in which there was no direct proof of any negligence that caused a trolley wire to break, the court submitted the question of the defendant's liability to the jury because, "He thought it would fairly be inferred from all the circumstances that the company had either negligently constructed its trolley wire, or had failed to keep it in proper repair at the point of the accident, and no other cause was apparent to which the falling of the line could be attributed." On appeal, the Supreme Court said, "The question for the jury was not whether there was no other apparent cause than the defendant's neglect for the breaking of the wire; the question before them was, did the neglect of the defendant company cause it to break? If this did not appear, there was no liability upon the defendant. The appellees were not required to establish the negligence of the defendant by direct or positive proof. Like any other fact, negligence may be, and often is, established by circumstantial evidence; but when such

proof is relied upon it must fairly and reasonably lead
to the conclusion that the specific act of negligence ex-
isted, as charged, and was the proximate cause of the
injury sustained." Under the facts of that case a judg-
ment in favor of the plaintiff was reversed.

In applying the rule, in a case of doubtful cause of in-
jury, we held in Palmer v. Gas Co., 49 Pa. Superior Ct.
572, "It does not rest on the maxim, res ipsa loquitur, nor
on a presumption of negligence from the failure of the
defendant to satisfactorily account for the leaking. It
rests on evidence fairly tending to show that in view of
all the conditions present and apparent at the time the
pipe was laid, due care was not used to secure the joints
in such manner as to prevent leaking from the strain upon
the pipe that was reasonably to be anticipated." The
case before us is not one of a defective or inadequate sup-
port, but one of an entire absence of support to an un-
weildy and heavy body.

The undisputed evidence determines "the conditions
present and apparent" to be a row of three, four, or five
lines of linoleum rolls, standing on end, of from fifteen
to twenty-four inches in diameter, six feet in height and
weighing from twenty-five to 200 pounds, without any
support by rail or like guard, along an aisle frequently
used by trucks, men and women. Was this due care
under the circumstances, was it a reasonable protection
to persons who were rightfully using this aisle to allow
these heavy rolls with uneven bases, and subject to jar
of passers-by or trucks, or the vibration of the floor, to
remain without superadded support to their weight?
In other words, was the upsetting of such a roll a fact
"reasonably to be anticipated" from the general knowl-
edge of natural laws. This is not a question of law, but
purely one of fact, and the evidence adduced comes up
to the standard required by the above decisions.

An employer is not bound to make use of the very
latest and best methods of construction, but may conduct
his business in his own way, even though it be more hazard-

ous than some other methods that may be devised. So long as the plans are reasonably safe, and the situation is apparent upon inspection, the employee takes the risk if he enters the employ: McCarthy v. Shoneman, 198 Pa. 568.

The testimony in such a case, to justify a verdict against the defendant must be, that from it the jury may reasonably conclude that the defendant was negligent. And while this case is a close one, it becomes so not from any doubt as to the decisions related to the duty and responsibility of employer, but from the inferences and conclusion to be drawn from the physical facts established by the evidence.

Neither judges or jurors can ignore the natural results of every day observations as applied to movable objects. What is, and what is not negligence in the arrangement of heavy movable objects along an aisle in a department store that is frequently used, must be decided largely by the common sense observations of men, and their knowledge of natural laws.

This case belongs to the jury and not to the court. And this phase of it was fairly presented by the learned trial judge, viz. "Whether or not the employer, if he were a prudent person, would have foreseen the possibility of the rolls, or some of them, falling over or being knocked over easily by accident, then it is a question whether or not the defendants were negligent in failing to provide some guard or protection to persons who might lawfully be in the aisle, in the neighborhood of the rolls."

The judgment is affirmed.